# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TIMOTHY D., SUE D., and M.D., <br><br> Plaintiffs, <br><br> v. <br><br> AETNA HEALTH AND LIFE INSURANCE COMPANY, and KPMG LLP MEDICAL BENEFITS PLAN, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:18CV753DAK <br><br> Judge Dale A. Kimball |

This matter is before the court on Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' appeal from Defendants' denial of benefits for treatment M.D. received at Aspiro Wilderness Adventure Therapy and Dragonfly Transitions under the KPMG LLP Medical Benefits Plan, an employee benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. On May 16, 2019, the court held a hearing on the motion. At the hearing, Plaintiffs were represented by Brian S. King and Nediha Hadzikadunic, and Defendants were represented by Scott M. Petersen. The court took the matter under advisement. Having fully considered the law and facts related to the motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Timothy D. was an employee of KPMG LLP, which maintained a self-funded employee welfare benefit plan ("Plan") for its employees and eligible dependents. Plaintiff M.D.

is Timothy's child and is covered under the Plan. M.D. has dyslexia, attention deficit/hyperactivity disorder, insomnia from phase delayed sleep syndrome, depression, and substance abuse syndrome. M.D.'s mental health issues compounded in his senior year of high school and his substance abuse issues began as he started college. He eventually stopped going to classes and was living in his car.

M.D. received a variety of outpatient psychiatric therapy, but none proved effective at treating his mental health symptoms and substance abuse. Plaintiffs enrolled M.D. in a wilderness behavior program at Aspiro from February 29, 2016 to May 17, 2016. After M.D.'s treatment at Aspiro, Plaintiffs enrolled him at Dragonfly, a transitional living facility, where he received psychiatric care from May 18, 2016 to March 29, 2017.

Aetna denied coverage under the Plan for M.D.'s treatments at both of those facilities. Aetna denied coverage for treatment at Aspiro because the Plan does not cover wilderness treatment programs. Aetna denied coverage at Dragonfly on the basis that Dragonfly did not meet the definition of a residential treatment facility or any type of other inpatient treatment that is covered by the Plan.

The Plan "provides coverage for a wide range of medical expenses for the treatment of illness or injury. It does not provide benefits for all medical care." The Summary Plan Description ("SPD") states, "Your health plan pays benefits only for services and supplies described in this Booklet as covered expenses that are medically necessary."

The Plan also requires pre-certification for several types of medical expenses, including stays in a residential treatment facility ("RTF") for treatment of mental disorders, alcoholism, or drug abuse treatment and partial hospitalization programs for mental disorders and substance

2

abuse. The Plan covers inpatient treatment for mental disorders "in a hospital, psychiatric hospital, or residential treatment facility." "Inpatient benefits are payable only if [the] condition requires services that are only available in an inpatient setting."

The Plan specifically defines an RTF for treatment of mental disorders as an institution that meets several requirements. As part of those requirements, the Plan states that an RTF "is not a wilderness treatment program (whether or not the program is part of a licensed residential treatment facility, or otherwise licensed institution), education services, schooling, or any such related or similar program, including therapeutic programs within a school setting." This same exclusion for wilderness treatment programs is also listed in the Plan's list of excluded types of treatment. The Plan further specifically excludes "treatment in wilderness programs or other similar programs" under the "Behavioral Health Services" category.

Plaintiffs' Complaint alleges that Aspiro is a licensed outdoor behavioral health provider in the State of Utah and provides treatment for adolescents with mental health conditions. Plaintiffs' Complaint does not allege that Aspiro is an RTF under Utah law. There is also no allegation that Dragonfly is an RTF. Plaintiffs appear to acknowledge that Dragonfly is an "intermediate transitional living program."

Plaintiffs completed the appeals process with Aetna and then filed suit against Aetna in this court, asserting a claim for benefits under the Plan for M.D.'s treatment at Aspiro and Dragonfly and a claim for violation of the Mental Health Parity and Addiction Equity Act ("Parity Act") and the Affordable Care Act ("ACA") for unequal coverage for mental health benefits.

3

## DISCUSSION

In considering a motion for judgment on the pleadings, the court considers the Complaint in its entirety as well as documents incorporated into the Complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 322 (2007). It then considers whether the allegations in the Complaint and information from other permissible sources "plausibly suggest an entitlement to relief." *Aschroft v. Iqbal*, 556 U.S. 662, 681 (2009). Defendants argue that, even accepting the factual allegations of Plaintiffs' Complaint as true, this court should dismiss Plaintiffs' claim for benefits covering M.D.'s treatment at Aspiro and Dragonfly as a matter of law.

As an initial matter, Plaintiffs attached an Amended Complaint to their opposition to Aetna's motion. Defendants argue that it would be futile to allow Plaintiffs to amend. However, the court disagrees. The case is relatively new, the allegations in the Amended Complaint respond to and clarify some of the issues raised with respect to the Parity Act, and, as discussed below, the claims as pleaded in the Amended Complaint survive a motion for judgment on the pleadings. Plaintiff shall file their proposed Amended Complaint within ten days of the date of this Order.

### 1. Coverage Claim

Defendants contend that M.D.'s treatment at Aspiro and Dragonfly are not covered under the express terms of the Plan. When interpreting plan terms, "the court examines the plan documents as a whole and, if they are unambiguous, construes them as a matter of law." *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004).

4

In this case, Defendants claim that the Plan plainly excludes coverage for treatment in wilderness programs like Aspiro, even if it is part of an RTF. In *Roy C. and Rachel C. v. Aetna Life Ins. Co.*, No. 2:17CV1216DB, 2018 WL 4511972 (D. Utah Sept. 20, 2018), Judge Benson dismissed the plaintiffs' claim for care at a wilderness program under a similar Aetna plan.

But, contrary to Defendants' contention, Plaintiffs assert that the Plan's definition of an RTF as a facility that is not a wilderness treatment program does not show that the Plan excludes wilderness therapy in every instance. It only demonstrates that the Plan differentiates between two types of sub-acute treatments. Plaintiffs point out that the Plan's exclusion of wilderness therapy is inconsistent with the Plan's definition of "medically necessary" care. The Plan defines "medically necessary" as services that a health care provider would give to a patient for the purpose of evaluating or treating an illness, disease, or its symptoms. The Plan further states that the provision of medically necessary care must be in accordance with generally accepted standards of medical practice. Therefore, the Plan's exclusion of wilderness therapy, an intermediate sub-acute level of mental health care, may not be in accordance with generally accepted standards of medical care because it prevents beneficiaries from receiving medically necessary care. In addition, the Plan provides that covered expenses for treatment of mental disorders "include charges made for the treatment of mental disorders by behavioral health providers." The Plan defines a behavioral health provider as "[a] licensed organization or professional providing diagnostic, therapeutic, or psychological services for behavioral health conditions." M. received mental health treatment at Aspiro, a facility that meets the Plan's definition of a behavioral health provider. Aspiro is licensed by the Utah Department of Human Services as an Outdoor Behavioral Health Program, and provides individual, family, and group

5

therapy by integrating traditional forms of talk therapy with a more hands-on, experiential approach.

Defendants also argue that the Plan does not provide coverage for treatment at Dragonfly, which is a transitional living center. The Plan provides inpatient coverage for a stay in a hospital, psychiatric hospital, or an RTF. The Plan does not provide coverage for a transitional living program. But, as with Aspiro, Dragonfly is "a licensed and accredited" program that provides psychiatric care through individual, group, and family therapy, and appears to qualify as a behavioral health provider under the terms of the Plan. Dragonfly also appears to provide medically necessary psychiatric treatment. Therefore, there is conflict between the Plan's provisions.

Defendants do not specifically address whether Aspiro and Dragonfly were behavioral health providers under the Plan or whether the treatment was medically necessary. Rather, Aetna focuses only on the titles of the facilities, not the substance of the treatment. Because the Plan's "RTF" definition may contradict the Plan's "behavioral health provider" definition and the Plan's "medically necessary" definition, the court finds it cannot rule at this early stage of the litigation that the Plan unambiguously precludes coverage. The court will revisit the issue at the summary judgment stage.

### 2. Parity Act Claim

Defendants argue that the court should dismiss Plaintiffs' Mental Health Parity and Addiction Equity Act (Parity Act") claim because there is no private right of action and the Parity Act does not require coverage of wilderness treatment programs. The Parity Act requires parity in the provision of insurance coverage for mental health and substance use disorders as compared to

6

coverage for medical and surgical conditions in employer-sponsored group health plans. 29 U.S.C. § 1185a(3)(A). The Parity Act requires that treatment limitations applicable to mental health benefits be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits." *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1261 (D. Utah 2016).

Defendants' argument that there is no private right of action under the Parity Act is in direct contradiction with ERISA's remedial framework. The Parity Act was enacted by Congress to end discrimination in how ERISA plans provide health benefits for treatment of mental health and substance abuse relative to benefits for medical and surgical conditions. To suggest that Plaintiffs have no private cause of action under the Parity Act is to ignore the Act's very purpose. The only case Aetna relies on for the proposition that there is no private cause of action for a Parity Act claim has no precedential value and involves individual insurance, not a group policy governed by ERISA. *Mills v. Bluecross Blueshield of Tenn., Inc.*, No. 3:15-cv-552-PLR-HBG, 2017 WL 78488 (E.D. Tenn. Jan. 9, 2017). Absent a case from the Tenth Circuit or the United States Supreme Court stating that there is no private right of action under the Parity Act in an ERISA case, this court will recognize a private right of action in such cases.

To survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats differently than the disputed mental health or substance abuse services. *Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017). In *Melissa P. v. Aetna Life Ins.*, this court held that to state a plausible claim "a plaintiff need only plead as much of her prima facie case as possible based on the information in her possession," explaining that the plausibility standard requires "at least some relevant

7

information to make the claims plausible on their face." Case No. 2:18CV216-RJS-EJF, 2018 WL 6788521, at *7.

In this case, Paragraph 52 of Plaintiffs' Complaint states: "Aetna's exclusion of coverage for the type of sub-acute, intermediate mental health care M. received at Aspiro and Dragonfly imposes a treatment limitation on mental health and substance use benefits making them more restrictive in comparison to the treatment limitations the Plan imposes on medical/surgical benefits." Paragraph 54 of the Complaint states: "Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Aetna exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner Aetna excluded coverage of treatment for M. at Aspiro and Dragonfly."

At this stage, the court assumes all allegations are true and all factual inferences are interpreted in Plaintiffs' favor. Under such review, the court concludes that Plaintiffs' Second Cause of Action states a plausible cause of action under the Parity Act because the Plan appears to impose more restrictive treatment limitations on mental health and substance abuse benefits than it does on medical/surgical benefits. Plaintiffs' allegations that skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to levels of care for which Aetna excluded benefits to M.D. for mental health treatment are sufficient. The claim does not rest on formulaic recitations of the elements. Aetna denied benefits to M.D. by excluding the sub-acute, intermediate level of mental health care he received at Aspiro and Dragonfly. Plaintiffs allege

8

comparable benefits on the medical/surgical side that would provide benefits for the treatments at Aspiro and Dragonfly. Thus, as alleged, the mental health benefits are more restrictive.

The nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions. Discovery will show whether Aetna improperly limited mental health benefits under the Plan.

## CONCLUSION

Based on the above reasoning, the court allows Plaintiffs' to file the proposed Amended Complaint attached to its opposition and denies Aetna's Motion for Judgment on the Pleadings [Docket No. 11]. Plaintiffs shall file their Amended Complaint within ten days of the date of this Order.

DATED this 14th day of June, 2019.

BY THE COURT:

Dale A. Kimball,
United States District Judge