# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| D.K., K.K., and A.K.,<br><br>           **Plaintiffs,**<br>**v.**<br><br>**UNITED BEHAVIORAL HEALTH and ALCATEL-LUCENT MEDICAL EXPENSE PLAN for ACTIVE MANAGEMENT EMPLOYEES,**<br><br>           **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:17-cv-01328-DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendants United Behavioral Health and Nokia Medical Expense Plan for Management Employees' (formerly Alcatel-Lucent Medical Expense Plan for Active Management Employees) Motion to Dismiss Plaintiffs D.K., K.K., and A.K.'s Second Cause of Action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the motion on December 18, 2019. At the hearing, Defendants were represented by Michael H. Bernstein and Clint R. Hansen and Plaintiffs were represented by Brian S. King. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

# BACKGROUND

Plaintiffs are residents of the State of Texas.[1]  Plaintiffs D.K. and K.K. are Plaintiff A.K.'s parents.  D.K. was an employee of Alcatel-Lucent, a global telecommunications company, that was acquired by Nokia in 2016.  Alcatel-Lucent maintained a self-funded employee welfare benefit plan (the "Plan") for its employees and eligible dependents.  D.K. was a participant to the Plan, and A.K. was a beneficiary of the Plan.  A.K. suffers from depression, anxiety, and attention/hyperactivity disorder.  In addition, she has experienced suicidal ideation, and has been hospitalized on various occasions as a result of cutting.

Because of A.K.'s medical conditions, beginning in 2013, she started receiving medical care and treatment at the Discovery Ranch for Girls ("Discovery"), a residential treatment facility for adolescent girls with mental health conditions, in the State of Utah.  A.K. was first admitted to Discovery on November 4, 2013, and Plaintiffs submitted to United Behavioral Health ("UBH") claims for benefits under the Plan in connection with A.K.'s treatment there. On February 6, 2014, UBH sent Plaintiffs a letter denying Plaintiffs' claims for benefits under the terms of the Plan, and UBH continued to deny such claims through November 10, 2014. Specifically, UBH determined that A.K.'s treatment at Discovery was (1) not consistent with generally accepted standards of medical practice for the treatment of such conditions; (2) experimental; (3) and not clinically appropriate.  UBH further determined that A.K.'s treatment at Discovery represented education/behavioral services that were focused primarily on building skills and capabilities in communication, social interaction, and learning.

---

[1] After Plaintiffs filed a second amended complaint, Defendants moved to dismiss this case based on improper venue, or in the alternative, transfer this case to the United States District Court for the District of New Jersey. Finding, however, that venue was proper in the District of Utah, the court denied Defendants' motion in its entirety. *See* Mem. Decision and Order, ECF No. 32.

After this initial adverse determination, Plaintiffs asked for a level 1 appeal to contest A.K.'s denial of benefits. A few months later, UBH sent Plaintiffs a letter reaffirming the denial of A.K.'s care. UBH upheld the denial for precisely the same reasons it had indicated in the February 6 letter. Indeed, this new letter quoted verbatim the language from the February 6 letter. Eventually, Plaintiffs requested a level 2 appeal. Just as before, UBH responded with a letter upholding the decision to deny coverage for A.K.'s treatment. However, this letter contained new justifications for denying A.K. coverage: (1) A.K.'s treatment at Discovery was not medically necessary under the terms of the Plan; (2) A.K.'s symptoms were in remission; and (3) A.K.'s mental health needs could be treated at a lower level of care. Given UBH's pivot to new reasons for denying A.K. coverage, Plaintiffs submitted a request for another level two appeal, arguing that they were entitled to address UBH's new bases for denying A.K. coverage. Nevertheless, UBH again maintained its denial for coverage.

Following their exhaustion of the available internal administrative appeals, Plaintiffs requested and obtained an external review of their claim for benefits. The external reviewer upheld Defendants' denial of coverage under the Plan for A.K.'s treatment at Discovery, finding that A.K.'s treatment was not medically necessary under the terms of the Plan.

The Plan provides that "Covered Services" under the Plan "shall mean those expenses or costs that satisfy all of the terms and conditions necessary for payment under the Plan." The Covered Services under the Plan include both inpatient and outpatient mental health and chemical dependency care, as well as various medical and surgical services, including skilled nursing facility care and hospice care. The Plan specifies that it does not impose "any conditions for obtaining mental health and chemical dependency coverage not otherwise applicable to the Plan's general medical and surgical benefits." The Plan further provides that, "[f]or Plan

expenses to be covered, they must be Medically Necessary and provided in conformance with all

terms and conditions of the Plan." The Plan defines "Medically Necessary" as "[t]he

determination by the Claims Administrator, at its discretion, that a service or supply is medically

appropriate for the diagnosis or treatment of an Illness, Pregnancy or accidental injury," with

"consideration as to whether the service or supply meets all of the following:"

(i)     It is accepted by the health care profession in the U.S. as the most appropriate level of care (the frequency of services, the duration of services, and the site of services, depending on the seriousness of the conditions being treated such as in the Hospital or in the Physician's office).

(ii)    It is the safest and most effective level of care for the condition being treated.

(iii)   It is appropriate and required for the diagnosis or treatment of the accidental injury, Illness or Pregnancy.

(iv)    There is not a less intensive or more appropriate place of service, diagnostic or treatment alternative that could have been used in lieu of the place of service or supply given.

(v)     The treatment is provided in a clinically controlled research setting using a specific research protocol that meets standards equivalent to that as defined by the National Institutes of Health for a life-threatening or seriously debilitating condition. The treatment must be considered safe with promising efficacy as demonstrated by accepted clinical evidence reported by generally recognized medical professionals or publications.

(vi)    It is not an Experimental or Investigative Treatment, Drug, or Device.

Based on UBH's denial of benefits, Plaintiffs commenced the instant suit in December

2017 and have since amended their original complaint three times. In the Third Amended

Complaint, Plaintiffs raise two causes of action: (1) a claim for recovery of benefits under the

Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1132(a)(1)(B)); and

(2) violation of the Mental Health Parity and Addiction Equity Act ("Parity Act") (29 U.S.C. §

1132(a)(3)). Regarding their first cause of action, Plaintiffs contend that UBH's failure to

provide coverage for A.K.'s treatment at Discovery violated the terms of the Plan and UBH's

medical necessity criteria. As to their second cause of action, Plaintiffs allege that the Plan

offered benefits for medical/surgical treatment that were analogous to the benefits that the Plan

excluded for A.K.'s treatment, but for these analogous medical/surgical treatments, UBH did not exclude or restrict coverage based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner that UBH denied coverage for A.K.'s treatment at Discovery. Further, they generally allege that the Plan and the medical necessity criteria utilized by the Plan and UBH operated to limit coverage for mental health treatment in a way that was inconsistent with, and more stringently applied, than the methods the Plan and UBH utilized to limit coverage for comparable medical/surgical treatment.

## DISCUSSION

Defendants now move to dismiss Plaintiffs' Parity Act claim for failure to state a claim pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, and D.K. and K.K.'s individual claims for lack of standing. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quotation marks omitted). "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### I.     Parity Act Claim

The Parity Act establishes that health care plans that cover "both medical and surgical benefits and mental health or substance use disorder benefits" cannot impose more restrictive

treatment limitations or financial requirements on mental health benefits than they do for medical/surgical benefits. 29 U.S.C. § 1185a(a)(3)(A). In other words, "the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019) (unpublished).

While the purpose of the Parity Act seems clear, what is required to state a claim for a Parity Act violation is less straight forward. Indeed, "there is no clear law on what is required to state a claim for a Parity Act violation." *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019). Accordingly, this court has grappled with what is specifically required to state a Parity Act claim, and has ultimately concluded that a plaintiff must allege that "(1) [his or her] insurance plan is subject to the Parity Act; (2) the plan provides benefits for both mental health/substance abuse and medical/surgical treatments; (3) there are differing treatment limitations on benefits for mental health care as compared to medical/surgical care; and (4) such limitations on mental health care are more restrictive." *Michael W. v. United Behavioral Health*, No. 2:18-CV-00818-JNP, 2019 WL 4736937, at *18 (D. Utah Sept. 27, 2019) (unpublished). Importantly, to adequately plead the third and fourth elements, this court has recognized that "disparate treatment limitations . . . can be either *facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)." *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-cv-435, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (unpublished) (emphasis in original). In other words, simply because a plan does not explicitly discriminate against mental health benefits is not grounds to dismiss a Parity Act claim. Instead, if a plaintiff properly alleges that the health plan provider has "differentially applied a facially neutral plan term," then the claim can proceed. *Peter E. v. United HealthCare*

*Servs., Inc.*, No. 2:17-CV-00435-DN, 2019 WL 6118422, at *2 (D. Utah Nov. 18, 2019) (unpublished). And, at the very least, a plaintiff's as-applied challenge may survive if he or she identifies "the medical or surgical treatments that are analogous to the mental health or substance abuse treatments and allege[s] that there is a disparity in their limitation criteria." *Id.* (internal quotation marks omitted).

In this case, there is no dispute as to the first two elements. As for the third and fourth elements, Plaintiffs allege an as-applied violation of the Parity Act. Defendants contend that Plaintiffs' as-applied challenge fails for three reasons. First, they contend that Plaintiffs have failed to specify how UBH's adverse benefits determinations regarding A.K.'s treatment at Discovery were inconsistent with a benefits determination for medical/surgical treatment in the same classification. Second, they claim that the medical or surgical analogues that Plaintiffs cite in the Third Amended Complaint are too broad and have no factual support. Third, they assert that Plaintiffs have failed to draw any comparisons between limitations imposed on mental health treatment and those on medical/surgical services.

In response, Plaintiffs contend that they have adequately alleged an as-applied Parity Act violation. They allege that the denial and appeals process reflected an operation that, as applied, resulted in a denial of benefits based on overly restrictive and inconsistent criteria. More specifically, they allege that UBH applied incorrect criteria or interpreted the criteria improperly in evaluating the medical necessity of residential treatment. For example, Paragraph 20 of the Third Amended Complaint states that UBH denied coverage to A.K. after it alleged that she no longer met its criteria for residential care. Yet, in Paragraph 46, Plaintiffs point out that a case note from a doctor—upon whom UBH relied in denying A.K. benefits—stated that A.K. qualified for residential treatment but that long-term residential care was not a covered service.

Further, Plaintiffs point to three types of medical treatments that are analogous to A.K.'s intermediate residential treatment at Discovery: skilled nursing facilities, inpatient hospice care, and rehabilitation centers. Thus, when viewing the Third Amended Complaint as whole, Plaintiffs contend that they have sufficiently alleged their Parity Act claim such that it should survive Defendants' motion to dismiss.

Having reviewed the parties' respective positions, the court concludes that Plaintiffs have adequately alleged a violation of the Parity Act. Plaintiffs point to three types of medical treatments that are analogous to the treatment that A.K. received at Discovery: skilled nursing facilities, inpatient hospice care, and rehabilitation centers. Plaintiffs then allege that UBH imposed more restrictive and incorrect criteria in denying coverage to A.K. for her treatment at Discovery that it would not have and does not impose on patients who are receiving the analogous level of medical/surgical treatment. The court finds that these allegations are sufficient. This is so in light of the factual allegations that Plaintiffs assert with regard to the appeals process that Plaintiffs went through in challenging UBH's adverse benefit determinations. Plaintiffs point to the fact that it was not until UBH's *third* response to Plaintiffs' appeals for coverage that it claimed that coverage for A.K.'s treatment at Discovery was not medically necessary. Prior to that time, UBH had sent Plaintiffs essentially the exact same letter explaining the denial of coverage for other reasons. UBH's about-face on its reasoning for denying coverage, Plaintiffs allege and the court finds, is sufficient, at this stage, to at least imply that UBH imposed coverage limitations on A.K.'s mental health treatment that it may not have done had she been receiving medical/surgical treatment. Similarly, although UBH claims that it denied A.K. coverage because her treatment at Discovery was not medically necessary, the case note that Plaintiffs cite suggests that A.K. did, in fact, qualify to be in a

residential treatment center like Discovery. Again, this allows the court to at least infer, based on Plaintiffs' allegations, that UBH ultimately denied A.K. coverage for her mental health treatment at Discovery when it would not have denied coverage had she been receiving medical/surgical treatment. Thus, because this is a motion to dismiss and the court assumes all allegations are true and interprets all factual allegations in Plaintiffs' favor, the court concludes that Plaintiffs have put forth sufficient factual allegations to support their Parity Act claim.

The court also notes that while the Third Amended Complaint is sufficient to survive Defendants' motion to dismiss, there is also some ambiguity in Plaintiffs' factual allegations. The fault for that ambiguity, however, does not necessarily lie with Plaintiffs because the specifics as to how UBH interpreted and applied the Plan to A.K.'s situation is information held within UBH's exclusive control. And, as such, "Plaintiffs cannot be expected to plead facts that are in the possession of Defendants." *Kurt W. v. United Healthcare Ins. Co.*, No. 2:19-CV-223, 2019 WL 6790823, at *6 (D. Utah Dec. 12, 2019); *see also Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18CV753DAK, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) (unpublished) ("[A] plaintiff need only plead as much of her prima facie case as possible based on the information in her possession."). Indeed,

> [w]ithout knowing the criteria [UBH] relies on to evaluate the analogue to [A.K.'s] claim for coverage, the Court cannot expect [Plaintiffs] to allege the nonquantitative treatment limitations [UBH] applied to those other services with specificity. To require more would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards.

*Melissa P. v. Aetna Life Ins. Co.*, No. 218CV00216RJSEJF, 2018 WL 6788521, at *3 (D. Utah Dec. 26, 2018) (unpublished). Thus, for this additional reason, the court concludes that Plaintiffs have adequately alleged their Parity Act claim.

As a final matter, "[t]he nature of Parity Act claims is that they generally require further discovery to evaluate whether there is a disparity between the availability of treatments for mental health and substance abuse disorders and treatment for medical/surgical conditions." *Timothy D.*, 2019 WL 2493449, at \*4. It is for that reason that "[c]ourts in this jurisdiction favor permitting Parity Act claims to proceed to discovery to obtain evidence regarding a properly pleaded coverage disparity." *Michael W.*, 2019 WL 4736937, at \*18; *see also Timothy D.*, 2019 WL 2493449, at \*4 ("Discovery will show whether [UBH] improperly limited mental health benefits under the Plan.").

The court therefore concludes that Plaintiffs have properly stated a claim for violation of the Parity Act. Accordingly, Defendants' motion to dismiss that claim is denied.

## II.      Standing

In addition to asking the court to dismiss Plaintiffs' Parity Act claim, Defendants argue that D.K.'s and K.K.'s individual claims should also be dismissed for lack of standing. ERISA provides that only a plan "participant or beneficiary" can bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). In this case, Defendants claim that D.K. and K.K. lack standing because neither alleges that UBH denied them benefits relating to their treatment. They claim that, at best, D.K. and K.K. can only seek to enforce A.K.'s alleged rights. On the other hand, at the hearing, Plaintiffs conceded that K.K. lacks standing because the Third Amended Complaint makes no allegation as to her status under the Plan—that is, Plaintiffs failed to allege that K.K. was either a participant to or a beneficiary of the Plan. Nevertheless, Plaintiffs maintain that D.K., as a participant to the Plan, has standing to bring his claims.

Because Plaintiffs conceded that K.K. lacks standing, the court need not address K.K.'s ability to raise claims any further. As for D.K., the court concludes that he has standing because he was a participant to the Plan as alleged in the Third Amended Complaint. As a Plan participant, "he has standing to 'enforce his rights under the terms of the [P]lan," which "includes enforcing his right to obtain coverage for his minor child's medical bills." *Charles W. v. United Behavioral Health*, No. 2:18-CV-829-TC, 2019 WL 6895331, at *2 (D. Utah Dec. 18, 2019) (unpublished). This conclusion is consistent with the previous decisions that this court has rendered on this precise issue. *See, e.g.*, *Kurt W.*, 2019 WL 6790823, at *3; *Jeff N. v. United HealthCare Ins. Co.*, No. 2:18-CV-00710-DN-CMR, 2019 WL 4736920, at *2 (D. Utah Sept. 27, 2019) (unpublished); *Peter E.*, 2019 WL 3253787, at *2. Accordingly, K.K.'s individual claims are dismissed, but D.K.'s individual claims will remain.

## CONCLUSION

Based on the foregoing reasoning, Defendants' Motion to Dismiss is hereby GRANTED in part and DENIED in part. Defendants' motion is granted as to K.K.'s individual claims, and those claims are dismissed with prejudice. Defendants' motion is denied as to Plaintiffs' Parity Act claim and D.K.'s individual claims.

Dated this 17th day of January, 2020.

BY THE COURT:

DALE A. KIMBALL
United States District Judge